UNITED STATES TEXAS SOUTHERN DISTRICT COURT

| | | |
|---|---|---|
| CYRUS DREW | & | IN THE DISTRICT COURT OF |
| | & | |
| | & | HARRIS COUNTY, TEXAS |
| | & | |
| V. | & | |
| U.S. DEPARTMENT OF VETERANS AFFAIRS, and ROBERT A MCDONALD, SECRETARY Agency | | |
| | & | |
| | & | |

COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Cyrus Drew by and through his attorney for his Complaint against Defendant, on appeal from the decision of Administrative Law Judge Mehan of the Merit Systems Protection Board finding in charge No. DA-0752-15-0420-I-1 that Plaintiff was not constructively discharged or that his disability retirement was not involuntary. Plaintiff is also appealing EEO complaints Nos. 460-2015-00051X and 2003-0362-2014100812, filed with the Equal Employment Opportunity Commission which have not been processed within the last 180 days. Plaintiff hereby alleges the following:

THE PARTIES

1. Plaintiff, Cyrus Drew is an individual and a resident of Montgomery County, Texas.

2. Defendant is a federal agency, Department of Veterans Affairs office located at 6900 Almeda Road, Houston, Texas 77030.

1

JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. §1331 (federal question) as this civil action is brought under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e et seq. (gender discrimination, hostile work environment, retaliation) and the Americans with Disabilities Act of 1990, as codified, 42 U.S. C. §§ 1212-12117.  Plaintiff also alleges invasion of privacy under Texas State Law.

4. Venue is proper in this District, because a substantial part of the events giving rise to the claims occurred in this District pursuant to 28 U.S.C. §1391 (b) (2).

FACTS

5. Cyrus Drew, a disabled veteran, worked as a Ratings Specialist since July of 2005 for Defendant.

6. Mr. Drew transferred to the Houston Regional office in 2008.

7. Drew transition from female to male on or about August 6, 2009.

8. Shortly after the physical attributes of his transition became visible, Drew began experiencing a number of hostile work environment, including ostracism, stares, and threats.

9. On November 11, 2011, Mr. Drew requested to work from home via the WAH program in order to avoid comments and distractions as a result of his transition, but was denied in January of 2012.  Drew again requested to work from home in June of 2012 and was merely told his request had not been forgotten.

10. In April of 2012, Drew requested that his name be changed in several VA hospitals across the country in which he ordered documents from in order to perform his job. All requests were honored with the exception of the facility in Shreveport, Louisiana and Texas Valley Coastal Bend.

11. On or about October 1, 2012, Michael Brown of the Overton Brooks VAMC in Shreveport, Louisiana, unlawfully accessed Mr. Drew's FBI background information.

12. During this same period, Larry Meador, admitted to accessing Mr. Drew's medical records.

13. On or about January 2013, Drew met Houston VA Director, Pritz Navarathasingam and Assistant Director, James Hedge and made complaints of a hostile work environment due to his gender transition and was told the Agency could not prevent people from exercising their first amendment rights and the conditions continued.

14. In January of 2013, Larry Meador unlawfully accessed Drew's personal medical records.

15. In February of 2013, after complaining to management, Drew was issued a warning for not meeting production by supervisor Van Stringer.

16. In April of 2013, Stringer removed the ASPEN credit received by Drew for a case he had worked, in addition to mandating that Drew take his lunch during a specific timeframe, while not mandating the same of other employees.

17. On about 4/12/13, Drew requested a reassignment to a different team and was reassigned in May of 2013.

18. On or about May 3, 2013, Drew filed an EEO complaint after numerous attempts of having his name changed to match his gender within the VA system in order to perform his job duties.

19. On or about May 17, 2013, Drew requested sick leave for medical treatment and was told he would have to use LWOP (leave without pay) due to an alleged deficiency in his accrued leave, when in reality, Drew had enough annual leave on the books.

20. On or about June 26, 2013, the Agency certified that it was unable to accommodate Drew's disabilities.

21. On or about July 26, 2013, the Agency dismissed Drew's EEO complaint.

22. On or about July 26, 2013, Drew applied for disability retirement.

23. On or about September 13, 2013, Drew was placed on a Performance Improvement Plan.

24. On or about September 13, 2013, Drew requested reasonable accommodation.

25. On or about November 16, 2013, the Agency denied Drew's within grade increase.

26. On or about November 26, 2013, the Agency essentially denied Drew's request for reasonable accommodation.

27. On December 4, 2013, Drew filed a second EEO complaint alleging denial of reasonable accommodation, being unlawfully placed on a performance improvement plan, and hostile work environment.

28. On or about January 27, 2014, Drew and the Agency went through mediation, wherein a tentative, verbal settlement agreement was reached.

29. On or about March 6, 2014, Drew received and declined a written settlement agreement that differed from the verbal settlement agreement he and the Agency agreed upon.

30. On or about March 11, 2014, Drew filed a third EEO complaint alleging that an Agency employee unlawfully accessed his medical records.

31. On March 21, 2014, Drew was notified that his disability retirement had been approved.

32. On or about March 25, 2016, the Agency, via Denise Gabino, advised Drew that he needed to make a decision immediately regarding acceptance or rejection of the disability retirement, to which Drew protested asking that he have time to consider and research the options.

33. On or about March 25, 2014, after being told he had to make a decision, the Agency cut Drew's access to his work computer and other passcode protected documents.

34. On or about March 25, 2014, Drew accepted the disability retirement.

35. On August 26, 2014, Drew amended his EEO complaint to allege constructive discharge.

## COUNT ONE

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

a. Discrimination based on gender

36. The foregoing paragraphs are re-alleged and incorporated by reference herein.

37. Defendant's conduct, namely failure to address the hostile work environment issues raised by Drew is based on gender discrimination, specifically Drew's gender change.

38. Defendant's conduct of ostracism, threats, stares, and isolation constituted behavior based on gender discrimination, specifically Drew's gender change.

39. Defendant's conduct of failing to change Drew's name in the VA hospital settings was based on gender discrimination, specifically Drew's gender change.

40. Defendant's conduct of accessing Drew's private medical and FBI records was based on gender discrimination, specifically Drew's gender change.

41. Defendant's conduct of having work credit taken away from him; being placed on a restricted lunch period; and not being able to take leave was based on gender discrimination.

42. Defendant's failure to reasonably accommodate Drew's disability request was based on gender discrimination.

43. All of Defendant's aforementioned actions caused Drew to involuntarily choose to apply for and accept disability retirement effectively constituting Defendant's constructive discharge of Drew's employment.

b. Hostile work environment

44. Defendant's conduct of ostracism, threats, stares, and isolation constituted a hostile environment, specifically towards Drew's gender change.

45. Defendant's conduct of placing Drew on a performance improvement plan constituted a hostile work environment.

46. Defendant's conduct of accessing Drew's private medical and FBI records created a hostile work environment via harassment specifically due Drew's gender change.

47. Defendant's conduct of failing to accommodate Drew's disability constituted a hostile work environment.

48. All of Defendant's aforementioned actions caused Drew to involuntarily choose to apply for and accept disability retirement effectively constituting Defendant's constructive discharge of Drew's employment.

c. Retaliation

49. Defendant's conduct of having work credit taken away from him; being placed on a restricted lunch period; and not being able to take leave was based on retaliation for complaining of a hostile work environment.

50. Defendant's conduct of denying Drew leave when he had leave on the books was based on retaliation for complaining of a hostile work environment.

51. Defendant's conduct of placing Drew on a performance improvement plan was based on retaliation for complaining of a hostile work environment.

52. Defendant's failure to accommodate Drew's disability was based on retaliation.

53. All of Defendant's aforementioned actions caused Drew to involuntarily choose to apply for and accept disability retirement effectively constituting Defendant's constructive discharge of Drew's employment.

COUNT TWO

Americans with Disabilities Act of 1990, as codified, 42 U.S. C. §§ 1212-12117

a. Discrimination based on disability

54. Defendant's conduct of failing to accommodate Drew's disability was based on disability discrimination.

55. All of Defendant's aforementioned actions caused Drew to involuntarily choose to apply for and accept disability retirement effectively constituting Defendant's constructive discharge of Drew's employment.

COUNT THREE

Invasion of Privacy

56. Defendant's conduct of accessing Drew's private medical and FBI records intentionally intruded upon Drew's private affairs.

57. All of Defendant's aforementioned actions caused Drew to involuntarily choose to apply for and accept disability retirement effectively constituting Defendant's constructive discharge of Drew's employment.

PRAYER

WHEREFORE, the Plaintiff requests that the court award her:

(a) Reinstatement to Drew's position at a GS-12, step 6 level, with all attendant back pay, benefits and other emoluments of employment, or in the alternative, front pay in lieu of reinstatement.

(b) Back-pay;

(c) Compensatory damages;

(d) Monetary damages for mental anguish, pain and suffering;

(e) Costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon;

(f) Other damages and further relief as deemed just.

JURY DEMAND

The Plaintiff requests trial by jury.

Respectfully submitted,

\_\_\_\_/s/ Tracie Jackson

Tracie Jackson
State Bar No. 24053020
Frye, Oaks, Benavidez & O'Neil
3315 Mercer St.
Houston, TX 77027
713-227-1717 Phone
713-522-2610 Fax
Traciejackson@hushmail.com