UNITED STATES DISTRICT COURT　　　SOUTHERN DISTRICT OF TEXAS

Cyrus Drew, §
　§
　　Plaintiff, §
　§
versus §　　Civil Action H-16-3523
　§
U.S. Department of Veterans §
Affairs, et al., §
　§
　　Defendants. §

## Opinion on Summary Judgment

　　Cyrus Drew and the U.S. Department of Veterans Affairs have cross-moved for summary judgment. Drew's motion will fail, and the Department's motion will succeed in part and fail in part.

1.　*Background*

　　Cyrus Drew is a veteran who worked as a Ratings Specialist for the Department of Veterans Affairs.[1] He underwent a gender change from female to male in August of 2009. He claims that before his transition, he enjoyed cordial relationships with his co-workers and received excellent performance reviews. He claims that shortly after his transition became physically apparent, he suffered many hostilities, including threats, gestures, intimidations, and other inappropriate comments, and deliberate refusals to change his name from his original name to his new one in the company systems.[2]

　　He claims that after his gender change: his requests to work remotely

---

[1] [Doc. 1] at ¶ 5.

[2] *Id.* at ¶ 8; [Doc. 64] at 4.

1

were denied; company personnel illegally accessed his FBI background information and personal medical records; he at times did not receive due credit for his completed work; he was forced to take lunch breaks during a specific time frame not required by other employees; he was denied sick leave on the basis of deficiency in his accrued leave despite that it was sufficient; he was placed on a Performance Improvement Plan; and he requested and was denied reasonable accommodation for his disabilities. Some of this treatment, he claims, had been retaliation for complaining about gender discrimination.

The Merit Systems Protection Board determined that Drew was subject to gender discrimination, but that he was not retaliated against, unreasonably accommodated, or constructively discharged. In his suit now before this Court, he alleges, under Title VII, gender discrimination, hostile work environment, retaliation, and constructive discharge.[3] He also brings an ADA claim for discrimination based on disability and a claim for "Invasion of Privacy," apparently as a Texas tort claim.[4]

2. *Legal Standards*

   A. *Standard of Review*

District courts generally have no jurisdiction to review final decisions of the MSPB; however, jurisdiction exists if the employee asserts "mixed claims," which is when the claims allege violations of both federal discrimination statutes and other claims. Discrimination claims raised administratively are reviewed *de novo*, and other claims based on the administrative record are reviewed with deference and will be upheld unless the MSPB's determination was clearly

---

[3] Drew's complaint pleaded constructive discharge under the count of "Invasion of Privacy," which was ostensibly a mistake; in his motion for summary judgment, he discussed the constructive discharge claim as one of his Title VII claims, which this Court will construe as his intent. *See* [Docs. 1 & 64].

[4] Drew's complaint did not state the legal basis for his "Invasion of Privacy" claim, but his motion for summary judgment referred to "the Texas state claim of invasion of privacy."[Doc. 64] at 1.

2

arbitrary and capricious, unsupported by substantial evidence, or otherwise not in accordance with law.[5]

In light of this standard, this Court reviews Drew's discrimination claims *de novo*; remaining claims, to the extent adjudicated by the MSPB, are reviewed with deference.

### B. Summary Judgment

Summary judgment is proper if the evidence, when viewed in the light most favorable to the non-moving party, shows that no genuine dispute of material fact exists and that the movant is entitled to judgment as a matter of law.[6] A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party.[7]

## 3. Gender Discrimination
### A. Legal Standard

Title VII of the Civil Rights Act of 1964 prescribes that employers cannot discriminate against an employee on the basis of sex.[8] Absent direct evidence of discriminatory intent,[9] a prima facie case for Title VII discrimination requires a plaintiff to show that: (1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were

---

[5] 5 U.S.C. § 7703(c); *Aldrup v. Caldera*, 274 F.3d 282, 285–87 (5th Cir. 2001).

[6] Fed. R. Civ. P. 56(a).

[7] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[8] *See* 42 U.S.C. § 2000e-2.

[9] Direct evidence is evidence that shows, on its face, that an improper criterion served as a basis for the adverse employment action. *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (citations omitted).

treated more favorably.[10] Once the plaintiff has established a prima facie case, the burden of production shifts to the employer to provide a legitimate, non-discriminatory reason for the action.[11]

The Department does not argue that Drew meets the first and second elements; rather, it disputes that Drew has experienced an adverse employment action and argues that he has failed to show that anyone similarly situated to him outside his protected class was treated more favorably.

B.   Analysis

As noted by the judge in the agency proceeding, Drew "presented no direct evidence that the agency's decision to withhold his WIGI was based on his transgender status," and "did not submit evidence that any similarly-situated employee . . . was treated more favorably."[12] The Court, upon review of the record, agrees with both of these observations and finds that while the former may be probative of his gender discrimination claim, the latter dooms it.

The first question, whether the agency's decision to withhold Drew's WIGI amounts to an adverse employment action,[13] does not need to be addressed because Drew has plainly failed to show the fourth element. He has offered no evidence that those similarly situated to him were treated more favorably with respect to legally recognized employment actions. Since Drew did not come forward with any competent summary judgment evidence demonstrating a genuine fact issue, the Department will prevail on Drew's

---

[10] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citations omitted).

[11] *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003).

[12] [Doc. 64–16] at 20.

[13] A plaintiff suffers an adverse employment action when there is "a significant change in [the plaintiff's] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 268 (5th Cir.1998) (citations omitted).

gender discrimination claim.

4. *Hostile Work Environment*

   A. *Legal Standard*

   A prima facie case for hostile work environment under Title VII requires a plaintiff to show that: "(1) the employee belonged to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a 'term, condition, or privilege' of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action."[14]

   Title VII is not a general civility code; there must be "discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment."[15] To be sufficiently severe or pervasive, courts consider the totality of the circumstances, considering: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.[16]

   B. *Analysis*

   Drew testified that after his transition, his co-workers ostracized him, including staring and laughing at him on a daily basis.[17] Drew recounts instances when they quoted Bible verses at him about God's disapproval of his actions, intentionally referred to him as a woman, and even on at least one occasion made

---

[14] *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 923 (5th Cir. 2022) (citations omitted).

[15] *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 617 (5th Cir. 2020) (cleaned up).

[16] *Id.* at 618 (citing *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007)).

[17] [Doc. 64-17] at 12–13.

a crude physical gesture at him.[18] Drew also seems to file other grievances under the umbrella of hostile work environment, including failure to change his name, failing to credit his work, and poorly rating his performance; these other issues, however, are not intimidation, ridicule, or insult, and are ill-suited for this claim, which is in essence a sexual harassment claim.

Looking to the record, Drew's hostile work environment claim comfortably survives the Department's summary judgment motion. While the Department asserts that Drew's experiences are "[in]sufficiently severe or pervasive" to create an abusive working environment,[19] this characterization is callous at best. When construing the evidence in Drew's favor, he has offered enough to at least present a factual question.

The remaining question is whether Drew can prevail on his own summary judgment motion. Viewing the evidence in the light most favorable to the Department, the Court cannot say that Drew prevails as a matter of law. While the Court is sympathetic to Drew's account of the hostilities he has experienced, valuations of the severity, impact, and credibility of Drew's interpretation of the alleged harassment are best left to the trier of fact in this unique instance.[20] Accordingly, this claim will survive summary judgment.

---

[18] [Doc. 64–17] at 13–14. As to the crude gesture, Drew testified that a man named Hugh Davis walked by Drew's desk, grabbed his crotch, said to Drew, "I'm a real man," pumped his crotch at Drew, and then walked away. *Id.* at 13.

[19] [Doc. 69] at 11.

[20] This case is unique in that much of Drew's evidence is not testimony of what happened so much as it is what he *perceived* happened. For example, Drew claims that people were avoiding him, security guards would look at him like he was crazy, and people would whisper to each other and giggle, although Drew admits that he could not actually hear what was being said. In viewing this testimony most favorably to the Department, Drew's account — even if uncontested — does not necessarily indicate enough harassment, in totality, to constitute a hostile work environment. Since a significant part of his evidence is based on perception, valuations as to the accuracy of those perceptions (that is, whether his co-workers were in fact avoiding him, giving him looks, or whispering derogatory comments about him) are better left to a trier of fact.

5.   *Retaliation*

   A.   *Legal Standard*

Under Title VII, it is unlawful for an employer to retaliate against an employee who "opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."[21]

A prima facie case for retaliation under Title VII requires a plaintiff to show that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action.[22] At the prima facie stage, causation can be established by either (1) a sufficiently close temporal proximity, or (2) other evidence of retaliation, such as departure from typical policies and procedures.[23]

Adverse employment actions include only ultimate employment decisions such as hiring, firing, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.[24] An employment action that does not affect duties, compensation, or benefits is not an adverse employment action.[25] Mere "petty slights, minor annoyances, and simple lack of good manners" will not suffice.[26]

   B.   *Analysis*

Drew claims that the Department retaliated against him for filing an

---

[21] 42 U.S.C. § 2000e-3(a).

[22] *Caldera*, 274 F.3d at 286.

[23] *Paulin v. Mayorkas*, No. 22-30285, 2022 WL 17496028 at *3 (5th Cir. 2022) (citations omitted).

[24] *Butler*, 161 F.3d at 268 (citations omitted).

[25] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004).

[26] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

7

EEOC complaint about a hostile work environment and that it did so by taking away his work credit, restricting his lunch period, placing him on a Performance Improvement Plan (PIP), denying his WIGI, denying his sick leave requests, and refusing to accommodate his disabilities. While the two sides do not dispute that filing an EEOC claim is statutorily protected, they dispute whether there has been an adverse employment action and whether causation exists.

i.    *Adverse Employment Action*

Some of Drew's allegations do constitute adverse employment actions. The restriction on his lunch period does not suffice, and the refusal to accommodate his disabilities in light of the hostile work environment is dubious considering that it does not affect his pre-existing duties, compensation, or benefits. The Department's alleged denial of Drew's attempt to take annual leave in lieu of sick leave, as Drew claims is a customary practice, would also fail to constitute an adverse employment action because "a single denial of leave for a specific date and time does not constitute adverse employment action."[27]

Withholding work credits for work that Drew completed, however, does constitute an adverse employment action, given its direct implications on his compensation and benefits. Furthermore, while placement on performance improvement plans in other contexts have been held to not be an adverse improvement action,[28] the plans in those cases apparently did not implicate compensation; in Drew's case, he asserts that placement into the plan meant denial of his WIGI. If he is correct that this compensatory hook exists, his placement on this plan, and the corresponding denial of his WIGI, would constitute an adverse employment action, since this form of retaliation adversely

---

[27] *Price v. Wheeler*, 834 F. App'x 849, 857 (5th Cir. 2020) (citations omitted).

[28] *See, e.g., Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019); *Turner v. Novartis Pharma. Corp.*, 442 F. App'x 139, 141 (5th Cir. 2011).

8

affected his salary.[29]

    *ii.    Causation*

On the performance improvement plan and the effect of that plan on Drew's WIGI, he has not established that placement into the plan or withholding his WIGI was motivated by retaliatory intent. In fact, Drew admits that he was not meeting his production standards.[30] He also does not assert that his placement was a departure from typical policies and procedures.

Drew does establish causation at the prima facie stage, however, by showing a sufficiently close temporal proximity. He filed his first EEOC complaint alleging sex discrimination and invasion of privacy on May 3, 2013,[31] and his placement into the plan occurred on September 9, 2013.[32] The Court finds that this proximity is sufficient for a prima facie case, particularly when considering the surrounding circumstances.[33] Actual causation is best addressed by the trier of fact, so both parties' summary judgment motions will be denied with respect to the retaliation claim.

6.    *Constructive Discharge*

---

[29] While Drew's supervisor indicated that given the late notice to Drew that his WIGI was denied, which meant that he would have been eligible to receive some retroactive payment upon successful completion of the PIP, it is (1) unclear if that is completely true, (2) the payment apparently would only be retroactive to December 2013, and (3) retroactive payment is not guaranteed, but rather contingent upon successful completion of the PIP. *See* [Doc. 64–16] at 12.

[30] [Doc. 64–17] at 56, 62.

[31] [Doc. 64–7].

[32] [Doc. 64–11].

[33] Although it does not rise to an adverse employment action, the Court also observes that the Department denied Drew's May 14, 2013 request for leave on June 5, 2013. [Doc. 64–9].

9

A.  *Legal Standard*

Drew pleads that he was constructively discharged.[34] The inquiry to determine whether a constructive discharge has occurred is whether working conditions became "so intolerable that a reasonable person in the employee's position would have felt compelled to resign."[35] Relevant factors include:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.[36]

For a hostile work environment to reach the point of constructive discharge, there must be aggravating factors that demonstrate a greater degree of harassment than that required by a hostile work environment claim.[37]

B.  *Analysis*

While Drew's hostile work environment claim survives summary judgment, the record is barren as to the aggravating factors that he needs to establish his constructive discharge claim. None of the enumerated factors are

---

[34] Drew does not list constructive discharge as a cause of action; rather, he pleads that he was constructively discharged within his other distinct claims. The Court will excuse this gaffe and construe his complaint as having properly pleaded constructive discharge under Title VII.

[35] *Aryain v. Wal–Mart Stores Texas LP*, 534 F.3d 473, 480 (5th Cir.2008) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004)).

[36] *Id.* at 481 (citations omitted). The enumerated considerations are "not exclusive." *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292 (5th Cir. 1994).

[37] *Newbury v. City of Windcrest, Texas*, 991 F.3d 672, 677–78 (5th Cir. 2021) (citations omitted).

present here; for example, he has not been demoted nor reassigned to menial work, and his salary has not decreased.

While his best argument may be that the ridicule and insult at work has been so dehumanizing that a reasonable person would feel compelled to resign, the source of his alleged ridicule and insult is not by the Department, but rather his fellow employees. Although he may be unsatisfied with the Department's remedial efforts to curb his peers' conduct, the Department's deficiencies do not make its employees' harassment its own calculated efforts. Even if the Court were to impute these actions onto the Department, a claim based on general unfriendliness and isolated confrontations "falls far short" of harassment severe enough to be constructive discharge.[38]

Finding no support in the record that would support a reasonable trier of fact to find that Drew was constructively discharged, this claim will be denied.

7. *Disability Discrimination*

Drew makes a claim for failure to accommodate under the ADA, despite that the ADA does not apply where the employer is the federal government, as is the case here.[39] Rather, the Rehabilitation Act is the proper vehicle for disability discrimination claims against a federal agency, and the statute incorporates the standards of the ADA.[40]

The Department is correct that Drew does not have a cognizable claim under the ADA; however, this error is not fatal, as incorrectly citing to a statute that provides no remedy "is not determinative."[41] The inquiry is not whether the

---

[38] *Id.* at 678 (citations omitted).

[39] *See* 42 U.S.C. § 12111(5)(B)(i); *Smith v. Potter*, 400 F. App'x 806, 812 (5th Cir. 2010) (citations omitted).

[40] 29 U.S.C. § 794(a), (d); *Lopez-Baca v. Geren*, 599 F. Supp. 2d 744, 753 (W.D. Tex. 2008).

[41] *May v. Andres*, No. 3:16-CV-1674-L, 2017 WL 495832 at *8 (N.D. Tex. Feb. 7, 2017).

well-pleaded facts perfectly match the statute cited by the movant, but rather whether the movant has stated a claim cognizable under a proper legal theory.[42]

### A. Legal Standard

The ADA standards apply to disability discrimination claims under the Rehabilitation Act. To establish a failure to accommodate, the plaintiff must prove that he: (1) is a qualified individual with a disability; (2) the disability and its limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations.[43] This right to accommodation affords only reasonable accommodation, not the employee's preferred accommodation; it only needs to sufficiently meet the job-related needs of the individual.[44]

### B. Analysis

The parties dispute only the third prong: whether the Department made reasonable accommodations for Drew's known disability. Drew sought accommodations on grounds that his pre-transition disabilities were exacerbated by the allegedly hostile work environment.[45] He requested a private work area; a case assignment schedule; assistance of a mentor; weekly meetings with a

---

[42] "[I]t is clear that the federal rules—and the decisions construing them—evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage . . ." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1219 (4th ed.). *See also Rajala v. Gardner*, 661 F. App'x 512, 517 (10th Cir. 2016) (asserting in the context of summary judgment that "[p]leading an incorrect statute is not fatal if the relevant facts are pled, and Defendants do not assert surprise or unfairness.").

[43] *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020).

[44] *E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (citations omitted).

[45] [Doc. 64–16] at 9–10. These conditions include traumatic brain injury and residual migraine headaches, sleep apnea, hypersomnia, anxiety, depression, panic agoraphobia, lower leg pain, and arthritis. *Id.*

supervisor; excused absences from trainings and team meetings; flexible leave for health and medical appointments; written work agreements; an ergonomic chair; an electronic device to assist with organization; and a reset of his PIP start date.[46]

In response, the Department offered Drew a more secluded cubical, noted that his workload was fixed and assured him that no assignment changes will occur, and emphasized that he already has bi-weekly meetings with his coach. It informed him that the trainings and meetings are required, that he already has daily breaks, that his expectations are set forth in the PIP, that the chair will be addressed upon medical documentation, and that the electronic device would be problematic. The Department offered to reset the date of his PIP.[47]

Upon review, Drew has not met his burden of proving that the accommodations offered by the agency were unreasonable. The Court agrees with the ALJ that the Department's response to Drew's requests were reasonable. The Department gave a point-by-point response to each of Drew's requests, offering thoughtful responses that evince an interactive process.[48] Many of the requests that the Department did not acquiesce to were requests that would have done much more than put Drew on equal footing with his peers, and instead would have afforded him special preferential treatment over them, such as exemptions from mandatory trainings and meetings. Aside from his requests for resources that he already had available, and his outlandish requests, the agency comfortably fulfilled his sensible requests; on the evidence, no reasonable jury could find that the Department failed to offer reasonable accommodation.

Moreover, reasonableness of an accommodation is required to establish a prima facie case, and the burden of proving that reasonableness belongs to the

---

[46] [Doc. 64–12]. He also requested to work remotely, but this request did not come as a disability accommodation request, and ostensibly came before the agency knew about his reasons for the request. *See* [Doc. 64–16] at 29–30.

[47] [Doc. 64–13].

[48] *Id.*

plaintiff.⁴⁹ Drew has offered no evidence that his requests were reasonable; for example, he could have shown that missing the trainings and meetings would not materially affect his work, or that more private working spaces were readily available, or that the electronic device requested would not create the issues feared by the Department. With no evidence, his prima facie case collapses.

Since no reasonable jury could find that the Department failed to offer reasonable accommodations, and since Drew has not proved the reasonableness of his requests as required for his prima facie case, the Department will prevail on summary judgment on the disability discrimination claim.

8. *Invasion of Privacy*

Drew alleges that the Department violated his privacy rights by accessing his private medical and FBI records. While he does not cite to any right of action, the Court's earlier analysis indicates that this omission is not dispositive.⁵⁰

A. *Privacy Act of 1974*

This Court has already twice rejected Drew's motion to amend his complaint to add a cause of action under the Privacy Act of 1974.⁵¹ The Court cannot consider this statutory claim at this stage, even if Drew has pleaded sufficient facts, because it would be unfair and prejudicial to the Department. Since Drew offered no legal basis for his invasion of privacy claim until his motion for summary judgment, wherein he referred to "the Texas state claim of invasion of privacy,"⁵² the Department had not been on notice for this cause of

---

⁴⁹ *Jones v. Lubbock Cnty. Hosp. Dist.*, 834 F. App'x 923 (5th Cir. 2020) (citing *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996)).

⁵⁰ *See supra* note 42.

⁵¹ [Docs. 76 & 84].

⁵² [Doc. 64] at 1.

action and understandably interpreted the relevant part of Drew's vague pleadings as a claim under the FTCA. This claim will not be considered.

### B. FTCA

Under the FTCA, the government waives sovereign immunity only if the claimant has first presented the claim to the appropriate federal agency.[53] Since Drew never filed an administrative claim for invasion of privacy under either statutory or common law, he has failed to meet exhaustion requirements. His claim, to the extent that it is based on Texas law, will also fail.

## 9. Conclusion

Cyrus Drew's motion for summary judgment will fail, and the Department's motion for summary judgment will succeed in part and fail in part. On the gender discrimination claim, Drew's motion will be denied and the Department's motion will be granted. The hostile work environment and retaliation claims will proceed before a trier of fact, so both sides' motions will be denied. The Department will prevail on its motion with respect to the constructive discharge, disability discrimination, and invasion of privacy claims.

Signed on January 12, 2023, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[53] *In re Katrina Canal Breaches Litig.*, 351 F. App'x 935, 936 (5th Cir. 2009).